**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-25586-RAR**

**URSULO MAURICIO LAINEZ BRICENO**,

     Petitioner,

v.

**WARDEN, FEDERAL DETENTION
CENTER, MIAMI**, *E.K. Carlton, in his
official capacity*, *et al.*,

     Respondents.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

    **THIS CAUSE** comes before the Court upon Petitioner Ursulo Mauricio Lainez Briceno's Petition for a Writ of Habeas Corpus ("Petition"), [ECF No. 1], filed on November 27, 2025.  Petitioner alleges that he has been unlawfully committed to detention in the Federal Detention Center in Miami, Florida ("FDC Miami"), and seeks that the Court order his immediate release. *See* Pet. ¶ 2.  The Court having reviewed the Petition, the relevant submissions, and applicable law, it is hereby

    **ORDERED AND ADJUDGED** that the Petition, [ECF No. 1], is **DENIED** for the reasons set forth herein.

## BACKGROUND

    Petitioner is a Honduran citizen who has resided in the United States since 2019.  Pet. ¶ 3.  In August 2019, Petitioner fled Honduras to the United States where he entered without inspection and was thereafter apprehended and taken into Immigration and Customs Enforcement ("ICE") custody.  Pet. ¶ 3; Resp. at 2.  After United States Citizenship and Immigration Services ("USCIS")

determined he had a credible fear of torture, Petitioner was issued a Notice to Appear ("NTA") and placed into removal proceedings. Resp. at 2. The NTA charged Petitioner with inadmissibility under sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration Nationality Act ("INA"). *Id*. Petitioner then appeared for three hearings before an immigration judge on October 21, 2019, November 4, 2019, and November 27, 2019. *Id*. at 3. And, on December 23, 2019, Petitioner requested a custody redetermination and was released on a $5,000.00 bond. *Id*.; Pet. ¶ 3.

Following his release from detention, Petitioner, as he worked to prepare his asylum application, "was informed that the Government, in its discretion, would not pursue the removal proceedings against him." Pet. ¶ 7. The Government then filed a motion to dismiss removal proceedings against Petitioner, which was granted on October 5, 2023. Pet. ¶ 7.

On August 14, 2025, Petitioner was arrested at a traffic stop in Georgia and placed in immigration detention. Pet. ¶ 4; Resp. at 3–4. He was issued an NTA and once again charged under sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the INA. Pet. ¶ 9; Resp. 3–4. After being transferred to a number of detention facilities, Petitioner was transferred to FDC Miami, where he currently remains as proceedings are pending against him under § 235(b)(2)(A) of the INA. Pet. ¶ 9; Resp. 4.

On November 27, 2025, Petitioner filed this action requesting that the Court (1) assume jurisdiction over this matter and order that Petitioner should not be transferred outside of the Southern District of Florida during the pendency of the Petition; (2) "[i]ssue a writ of habeas corpus requiring Petitioner's immediate release and prohibiting his re-detention unless the Government provides seven days' notice and a hearing before a neutral arbiter in which it proves by clear and

convincing evidence that Petitioner is a danger or flight risk"[1] and "[o]rder that Respondents may not subject Petitioner to any post-release monitoring or supervision"; and (3) "[a]ward Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law[.]"  *See* Pet., Prayer for Relief.

On December 20, 2025, the Court issued an Order Granting in Part Petitioner's Motion for Expedited Consideration and Order to Show Cause ("Order to Show Cause"), [ECF No. 7], directing Respondents "to show cause why the Petition should not be granted and [to] file all documents and transcripts necessary for resolution of the Petition."  *See* Order to Show Cause at 3.  On December 12, 2025, Respondents filed a Response to Petitioner's Habeas Petition ("Response"), [ECF No. 14].  Petitioner subsequently filed a Reply, [ECF No. 16].  Accordingly, the Petition is fully briefed and ripe for review.

## LEGAL STANDARD

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241. The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration."  *Prieser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973).  Section 2241 authorizes federal courts to hear challenges to immigration detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (noting that "28 U.S.C.

---

[1] In the alternative, Petitioner requests that the Court "order that Respondents release Petitioner immediately or provide Petitioner with a bond hearing before a neutral arbiter pursuant to 8 U.S.C. § 1226(a) within 7 days, at which the government bears the burden of proving by clear and convincing evidence that continued detention is justified[.]" Pet., Prayer for Relief

§ 2241[ ] confers jurisdiction upon the federal courts to hear" challenges to the "lawfulness of immigration-related detention").

## ANALYSIS

Petitioner maintains that he is not subject to § 1225(b)(2), and therefore his continued detention violates the INA.  Pet. ¶¶ 102–104.  Petitioner also maintains that his detention violates his Fifth Amendment "fundamental interest in liberty and being free from official restraint" and that "[t]he Government's detention of Petitioner without a bond redetermination hearing to determine whether he is a flight risk or danger violates his right to due process."  Pet. ¶¶ 98–101.  Lastly, Petitioner asserts that his detention pursuant to § 1225(b)(2) is arbitrary and capricious and therefore violates § 706(2) of the Administrative Procedure Act ("APA").  Pet. ¶¶ 105–108.

Accordingly, there are three questions before the Court: (1) whether Petitioner is properly detained pursuant to § 1225(b)(2); (2) whether Petitioner's mandatory detention is consistent with the Due Process Clause; and (3) whether Petitioner's detention is in violation of the APA.  The Court addresses each question in turn.[2]

---

[2] "[A] federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (quoting *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)).  While there are certain jurisdiction stripping provisions that may preclude judicial review such as § 1252(g) and § 1252(b)(9), the Court's independent review of the record reveals that none are applicable here.  *See, e.g., Gomez-Pena v. Sec'y, Dep't of Homeland Sec.*, No. 3:25-cv-1287, 2026 WL 83980, at *2–3 (M.D. Fla. Jan. 12, 2026) (finding that petitioner's claims are not barred by 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9) because petitioner is not attacking "ICE's decision to commence removal proceedings, adjudicate his case, or execute an order of removal" nor is he "seeking to challenge the decision to seek removal or the process by which removability will be determined"); *Boffill v. Field Off. Dir.*, No. 25-25179, 2025 WL 3246868, at *2–4 (S.D. Fla. Nov. 20, 2025) (same).  Accordingly, "[t]he question of whether section 1225(b)(2) or section 1226(a) governs Petitioner's detention is a question of statutory interpretation squarely within the Court's jurisdiction."  *Sanchez-Moralez v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-20217, 2026 WL 496726, at *3 (S.D. Fla. Feb. 23, 2026).

**I.  Petitioner is properly detained pursuant to § 1225(b)(2) and is therefore not entitled to a bond hearing.**

Respondents maintain that Petitioner's detention is lawful pursuant to § 1225(b)(2). Specifically, Respondents contend that the plain language of § 1225(b)(2) mandates detention of applicants for admission; that applicants for admission under § 1225(b)(2) are seeking to be legally admitted into the United States; that § 1226 does not support Petitioner's argument; and that the Government's reading comports with Congressional intent and accords with the Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). *See* Resp. at 5–13. Petitioner, however, maintains that a "person with long-term residence in the United States who is alleged to be removable should be deemed detained under Section 1226(a)[.]" Pet. ¶ 103.

This Court's opinion in *Rocha Vargas v. Miami Federal Detention Center* is instructive here, as the Court addressed whether a similarly situated petitioner was detained pursuant to § 1225 or § 1226. No. 25-CV-25966-RAR, 2026 WL 911291, at *2 (S.D. Fla. Apr. 2, 2026). After carefully analyzing competing interpretations of § 1225 and § 1226, this Court concluded that "Petitioner [was] properly detained pursuant to § 1225(b)(2) and [was] therefore not entitled to a bond hearing." *Id*. at *1–2. Accordingly, for the reasons explained herein, Petitioner is similarly detained pursuant to § 1225(b)(2).

Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), an "alien[] treated as an applicant[] for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . )[.]" 8 U.S.C. § 1225(a)(1). And "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *Id*. § 1225(b)(2)(A). While § 1225(b)(2)(A) does

not, under any circumstances, permit the Government to release detained aliens on bond, under §

1226 "an alien may be arrested and detained pending a decision on whether the alien is to be

removed from the United States . . . [and] the Attorney General . . . [] may release the alien on []

bond of at least $1,500 with security approved by, and containing conditions prescribed by, the

Attorney General[.]"  *Id.* § 1226(a).  Accordingly, the resolution of the Petition turns on the

question of whether an alien who enters the United States without inspection and who has been

physically present and living in the United States for a number of years is subject to mandatory

detention under § 1225(b)(2)(A), without access to a bond hearing, or § 1226(a), which requires

an individualized bond determination.

As this Court explained in *Rocha Vargas*, the Petition presents a question of statutory

interpretation that has divided district judges across the country and in this district.  *See Rocha*

*Vargas*, 2026 WL 911291, at *3 (collecting cases).  The Fifth and Eighth Circuits have recently

considered the very question presented by the Petition, and have concluded that aliens like

Petitioner are detained pursuant to § 1225(b)(2)(A).[3]  *See Buenrostro-Mendez v. Bondi*, 166 F.4th

494, 502 (5th Cir. 2026) (finding that 8 U.S.C. § 1226(a) does not apply to petitioners, given that

"[t]he text and context of § 1225 contradict the petitioners' reading of the statute."); *Avila v. Bondi*,

No. 25-3248, 2026 WL 819258, at *6 (8th Cir. Mar. 25, 2026) ("[T]he district court erred in

---

[3] The Seventh Circuit discussed this question of statutory interpretation in the context of an order enjoining the Department of Homeland Security from making warrantless arrests of noncitizens, which is *not* the issue before this Court.  *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–61 (7th Cir. 2025).  The Seventh Circuit noted that "Plaintiffs have the better argument on the current record" as to the question of "whether § 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders[.]"  *Id.* at 1061.

While the Eleventh Circuit has not yet weighed in on this question, it is currently under advisement; indeed, oral argument was held on March 26, 2026.  *See* Oral Argument, *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, et al.*, No. 25-14065 (11th Cir. Mar. 26, 2026), ECF No. 68.

holding that the Government could not detain [petitioner] without bond under § 1225(b)(2)(A) and in granting habeas relief on that basis.").

Petitioner points to the fact that the Government's longstanding practice has been to detain similarly situated aliens pursuant to § 1226.  *See* Reply at 6 (noting that Petitioner was previously detained pursuant to § 1226(a) and released on bond). However, while "longstanding practice . . . can inform a court's determination of what the law is" it "does not justify a rule that denies statutory text its fairest reading." *Chen v. Almodovar*, No. 25 CIV. 9670 (JPC), 2026 WL 100761, at *13 (S.D.N.Y. Jan. 14, 2026) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) and *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015)). Accordingly, a fulsome analysis of the text and purpose of the competing statutory provisions is warranted.  And, while "[b]oth sides present plausible readings of the statutory text[,]" *Alvarez v. Noem,* No. 3:26-CV-73, 2026 WL 545382, at *2 (W.D. Pa. Feb. 26, 2026), the Court concludes that the Government's position presents the more compelling interpretation.

As explained in *Rocha Vargas*, under § 1225(b)(2)(A), an alien can be detained without bond if he is "an applicant for admission" and "if the examining immigration officer determines that [the] alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted[.]"  8 U.S.C. § 1225(b)(2)(A) (emphasis added).  *See Rocha Vargas*, 2026 WL 911291, at *4.  Here, Petitioner is both an applicant for admission *and* seeking admission pursuant to § 1225.

*First*, Petitioner is properly considered an applicant for admission under § 1225(a)(1).  An alien is "deemed for purposes of this chapter an applicant for admission" where they are "present in the United States [and] ha[ve] not been admitted or [have] arrive[d] in the United States (whether or not at a designated port of arrival . . . )".  8 U.S.C. § 1225(a)(1).  "As with any question of statutory interpretation, [the Court's] analysis begins with the plain language of the statute."  *See*

*Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009); *see also BellSouth Telecomm'ns, Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1187 (11th Cir. 2001) ("When interpreting a statute, 'it is axiomatic that a court must begin with the plain language of the statute.'" (quoting *United States v. Prather*, 205 F.3d 1265, 1269 (11th Cir. 2000)).  Here, the plain language suggests that Petitioner is an applicant for admission because he is currently present in the United States and has not yet been lawfully admitted.  Accordingly, because "[p]resence without admission deems [] petitioners to be applicants for admission[,]" Petitioner falls squarely within the definition of "applicant" for purposes of § 1225(a)(1).  *Buenrostro-Mendez*, 166 F.4th at 502.

*Second*, the Court finds that Petitioner is seeking admission pursuant to § 1225(b)(2)(A).  This presents a more complicated question of statutory interpretation, requiring an analysis of whether the terms *applicant for admission* and *seeking admission* are synonymous in nature.  A number of courts have read the term *seeking admission* to apply to only a subset of applicants for admission—not to all *applicants for admission*.  *See Kashranov v. Jamison*, No. 2:25-CV-05555-JDW*, 2025 WL 3188399, at *6 (E.D. Pa. Nov. 14, 2025) ("While [petitioner] is an applicant for admission, he is not seeking admission.  He's already here.").  But the Fifth and Eighth Circuits have, to the contrary, found that "an applicant for admission to the United States is 'seeking admission' to the same, regardless [of] whether the person actively engages in further affirmative acts to gain admission."  *Buenrostro-Mendez*, 166 F.4th at 502; *see also Avila*, 2026 WL 819258, at *3 ("[T]he structure of § 1225(b)(2)(A) does not indicate that 'seeking admission' is a separate requirement for detention under the statute.").  This Court's independent review of the plain meaning of the statute and its application of the canons of construction compels the same result.

"In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself.  Where, as here, that

examination yields a clear answer, judges must stop." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) (citation omitted).  It is uncontroverted that the plain meaning of the terms *applicant for admission* and *seeking admission* is the same.  *See Avila*, 2026 WL 819258, at *3.  Indeed, "[w]hen a person applies for something, they are necessarily seeking it." *Buenrostro-Mendez*, 166 F.4th at 502 (comparing the formal definitions of the terms "to apply" and "to seek"); *see also Candido v. Bondi,* No. 25-CV-867 (JLS), 2025 WL 3484932, at *3 (W.D.N.Y. Dec. 4, 2025) (explaining that "'applicant' and 'seeker' are, indeed, accepted synonyms" and because "there is no 'material variation' in meaning between these two terms[] there is no reason to apply interpretive canons").

Some courts have interpreted *seeking* to require present, affirmative action.  *See, e.g., Kashranov*, 2025 WL 3188399, at *6 ("The phrase 'seeking admission' functions as a present participial modifier of the term 'alien' within the statute. . . . The present participle, expressed in the progressive '-ing' form, conveys ongoing and continuous action rather than a completed or static state.").  However, to read *seeking admission* to apply only to those physically at the border ignores the complex realities of the United States immigration process.  To gain legal admission into the United States is a lengthy, multifaceted procedure, requiring aliens like Petitioner to apply for admission, continuously supplement their application, and sit for multiple rounds of interviews. Therefore, it is an artificial construct to view those *seeking admission* as only the subset of applicants at an entry point to the United States.

The Court acknowledges that there are meritorious arguments in opposition to this interpretation.  Indeed, a common counter is that by interpreting *applicant for admission* as equivalent to *seeking admission*, the phrase *seeking admission* is rendered superfluous.  But, as this Court explained in *Rocha Vargas*, this argument is unavailing.  *See Rocha Vargas*, 2026 WL

911291, at *6 (finding that the broader statutory context does not render *seeking admission* superfluous because "[i]n the absence of any statutory text suggesting otherwise, it does not appear that Congress intended to ascribe independent meaning to the phrase *seeking admission*.").  Nor is the Court persuaded by arguments grounded in congressional intent and the Government's longstanding practice.  *Id*. at *7 (noting how the Government's interpretation better aligns with IIRIRA's aims and that the Court's interpretation adheres to the statutory text rather than any arguments sounding in past practice).  Further, the Supreme Court's dicta in *Jennings v. Rodriguez,* 583 U.S. 281 (2018), is not dispositive here.  Some courts have found that this case reflects the Supreme Court's understanding that § 1225 applies to "aliens seeking admission"—while § 1226 applies to "aliens in the country."  *See, e.g.*, *Alvarez*, 2026 WL 545382, at *1.  However, others have noted that *Jennings* "does not foreclose the possibility that these categories overlap."  *See Rocha Vargas*, 2026 WL 911291, at *6 (citing *Buenrostro-Mendez*, 166 F.4th at 505).  Accordingly, because *Jennings* seemingly cuts both ways, the Court declines to hang its hat on *Jennings* in reaching its conclusion.[4]

    In sum, Petitioner is properly detained pursuant to § 1225.  Accordingly, the Court rejects Count II of the Petition that contends "[t]he application of § 1225(b)(2)(A) to Petitioner unlawfully mandates his continued detention and violates the INA."  Pet. ¶ 104.

---

[4]   The Court also rejects Petitioner's argument that "[t]he Government is judicially estopped from asserting that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)." Pet. ¶ 110. According to Petitioner, "[i]n prior litigation, including *Jennings v. Rodriguez*, the Government successfully argued that individuals who entered without inspection and were not apprehended near the border or within 14 days were subject to discretionary detention under § 1226(a)[.]" Pet. ¶ 110. As explained herein, the Court does not rely on *Jennings* in making its determination—it adheres to its interpretation of the statutory text. The Court is therefore unpersuaded by Petitioner's judicial estoppel argument. *See Liu v. Bondi*, No. CV 26-143 JB/GJF, 2026 WL 878280, at *10 n.10 (D.N.M. Mar. 31, 2026) ("[D]eclin[ing] to rely on judicial estoppel to resolve Count I" because the Tenth Circuit applies the judicial estoppel doctrine "both narrowly and cautiously" and the position to be estopped "must generally be one of fact rather than of law or legal theory." (citations omitted)).

## II.   Petitioner's detention does not violate due process.

Petitioner also argues that his detention violates due process, citing to the Supreme Court's opinion in *Zadvydas v. Davis*.  Pet. ¶¶ 98–101.  In *Zadvydas*, the Supreme Court has recognized two justifications for immigration confinement—preventing flight and preventing danger to the community.  533 U.S. 678, 690 (2001).  As such, Petitioner alleges a due process violation arising from his continued detention "without a bond redetermination hearing to determine whether he is a flight risk or danger violates his right to due process."  Pet. ¶ 101.

While the Government did not respond to Petitioner's due process claim, the Court's independent review of the relevant law reveals that Petitioner has not identified a due process violation.  In *Zadvydas*, the procedural posture of the case was entirely different, given that it involved a "post-removal-period detention statute."  *See Zadvydas*, 533 U.S. at 683; *Guerra, v. Director Florida Soft Side Detention Center*, No. 2:26-CV-756-KCD-NPM, 2026 WL 936435, at \*4 (M.D. Fla. Apr. 7, 2026) (explaining that "*Zadvydas* provides [petitioner] no help here for a simple and fundamental reason: he is detained under a completely different statutory scheme.")  Here, Petitioner has not alleged that he is in post-removal proceedings.

In *Demore v. Kim*, the Supreme Court addressed the constitutionality of the "detention of deportable criminal aliens *pending their removal proceedings*"—the procedural posture at issue here.  538 U.S. 510, 527 (2003).  Finding "[d]etention during removal proceedings [to be] a constitutionally permissible part of that process," the Court considered and concluded that individuals like Petitioner could be detained without any finding as to whether they posed a flight risk or danger to society.  *Id*. at 524–25.  And while the Court is aware that Petitioner has spent upwards of eight months in detention, an "alien's detention without a bond hearing [] often

become[s] unreasonable by the one-year mark, depending on the facts of the case." *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1217 (11th Cir. 2016), *decision vacated and appeal dismissed as moot*, 890 F.3d 952 (11th Cir. 2018).

In Petitioner's Second Notice of Supplementary Authority, he submits "developments regarding the availability of traditional due process protections under Supreme Court precedent" by way of "two decisions in the Southern District of Florida have ordered outright release of habeas petitioners on due process grounds to persons who—like Petitioner—were previously at liberty and then re-detained arbitrarily." [ECF No. 19] at 1. However, the Court's review of these two orders, *Ruiz Rodriguez v. Miami ICE Field Office Director*, No. 26-21606 (March 27, 2026), [ECF No. 13] and *Mora Arellano v. Warden Federal Bureau of Prisons et al.*, No. 26-20044 (Jan. 23, 2026), [ECF No. 10], reveals that the same procedural defects are not present in the instant case. In both *Ruiz Rodriguez* and *Mora Arellano*, the petitioners had prior Recognizance Orders that were revoked, with no explanation offered. However, here, Petitioner does not allege that any similar order was revoked; indeed, in his Due Process claim he merely alleges that his detention without a bond redetermination hearing constitutes a due process violation, an argument that was clearly rejected in *Demore*. Accordingly, Petitioner's detention comports with due process.

### III. Petitioner's APA Claim Must Fail.

In Count III, Petitioner alleges that his "detention is arbitrary, capricious, an abuse of discretion, violative of the Constitution, and without statutory authority in violation of 5 U.S.C. § 706(2)." Pet. ¶ 108. Under § 706(2), courts are obligated to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law[,]" that is "contrary to constitutional right [or] power[,]" or that is "in

excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]" 5 U.S.C. § 706(2).

As a threshold matter, habeas petitions are generally not a proper vehicle for an APA cause of action. Indeed, "[h]abeas has traditionally been a means to secure *release* from unlawful detention, but [Petitioner seemingly] invokes the writ. . . to obtain authorization to stay in this country." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 1963 (2020). Indeed, a number of courts, when presented with APA claims in a similar context, have noted that a habeas petition "is the wrong vehicle for the job." *Rodriguez Curbelo v. Noem*, No. 2:26-CV-749-KCD-NPM, 2026 WL 925638, at *5 (M.D. Fla. Apr. 6, 2026) (explaining that "[t]rying to shoehorn a freestanding APA challenge into a habeas petition simply does not work . . . [because a] habeas petition comes with a streamlined procedure, fast-tracked rules, and a nominal filing fee. An APA challenge, by contrast, is a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot sidestep those standard requirements by simply slapping a habeas label on an administrative complaint."); *Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at *7 (W.D. Tex. Jan. 9, 2026) (rejecting Petitioner's APA claim because "Petitioners do not specifically seek any non-habeas relief and have not paid the required filing fee for any such claim.").

More fundamentally, claims under the APA are only reviewable where there is "final agency action for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704. But Petitioner here has not established final agency action because "detention does not constitute a final agency action[.]" *Hernandez v. Collins*, No. 1:26-CV-289, 2026 WL 673557, at *3 (W.D. Tex. Mar. 9, 2026). Moreover, "[Petitioner] has an adequate remedy [in a court]—the very

habeas petition he filed to get through the courthouse doors." *Rodriguez Curbelo*, 2026 WL 925638, at *5; *see also Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring) (noting that "habeas corpus, not the APA, is the proper vehicle" because there is an "adequate remedy in a court[.]").

Even on the merits, Petitioner's APA claim must fail because, for the reasons explained herein, Petitioner's detention pursuant to § 1225 is not violative of the law or the Constitution. Accordingly, "[b]ecause Petitioner was classified and treated as the INA requires, the government has not acted arbitrarily or capriciously." *Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL, 2026 WL 507542, at *3 (D. Ariz. Feb. 24, 2026). Accordingly, Court III of the Petition must also be denied.

*     *     *

As noted in *Rocha Vargas*, the Court is not blind to the humanitarian concerns raised by the Government's approach, which forecloses the opportunity for immigrants awaiting admission to obtain a bond—immigrants in many instances who, like Petitioner, have little to no criminal history and have resided in this country for years. *Rocha Vargas*, 2026 WL 911291, at *9. But it is not for the courts to second-guess the wisdom of this policy. Because "[the Court's] role is to apply the law, not rewrite it[,]" *see Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 64 (2024), it is the Court's obligation to determine only whether the application of §§ 1225 and 1226 falls within statutory and constitutional bounds. Ultimately, this Court's fealty to the statutory text compels the reading set forth herein.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      Petitioner Ursulo Mauricio Lainez Briceno's Petition for Writ of Habeas Corpus, [ECF No. 1], is **DENIED**.

2.      All deadlines are **TERMINATED**, and any pending motions, including Petitioner's Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction, [ECF No. 4], are **DENIED as moot**.

3.      The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 14th day of April, 2026.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**